UNITED STATES of America

v.

Charles Stewart TUCKER, Appellant.

No. 12628.

United States Court of Appeals Third Circuit.

Argued March 2, 1959.

Decided May 8, 1959.

See also 161 F.Supp. 289.

Michael H. Sheridan, Wilkes-Barre, Pa. (Vincent M. Quinn, Pittston, Pa., on the brief), for appellant.

Carl H. Imlay, Washington, D. C. (Daniel Jenkins, U. S. Atty., Scranton, Pa., Oliver O. Dibble, Sp. Asst. to Atty. Gen., on the brief), for appellee.

Before GOODRICH, KALODNER and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

Appellant, Tucker, an officer of the Army Corps of Engineers is here appealing his conviction under Section 202 of Title 18, United States Code, on a charge of accepting gratuities with intent to have his official decisions and actions influenced thereby. The occurrences in question took place during the construction of the new Tobyhanna Signal Depot, a multimillion dollar project which included some eighteen new buildings, needed utilities systems and sundry site improvements. Appellant was for a time the resident army engineer of this project. There was evidence that he received miscellaneous gratuities, including six gifts of articles individually identified and valued from $85.00 to $365.00, from contractors or subcontractors on the job, and that he approved several items of obviously defective concrete work, permitted the acceptance of construction without the painting of structural steel as required by contract and sanctioned the use of scrap pipe in the construction of the underground fire sprinkler system which served the depot.

A principal contention on this appeal relates to statements made to the jury by the prosecutor in his oral summation after the taking of testimony had been completed. Defense counsel had argued to the jury that the amount of defective work disclosed by the testimony was small in relation to the vastness of the project, and that since the government proved no other defects, despite the great amount of data it must have possessed about the project, it could reasonably be assumed that no other defects were chargeable to Tucker. In replying to this argument the prosecutor first suggested that about three-fourths of Tucker's testimony had been false, from which he argued that it could be inferred that Tucker had actually received several times as many gifts as he had mentioned on the witness stand. Then the prosecutor proceeded as follows:

"The Government has been criticized for the fact that we haven't brought in more deficiencies at the Tobyhanna Signal Depot. This is only a small part of the deficiencies there."

Here was the plainest misuse of final argument to introduce prejudicial new evidence from the lips of the prosecutor himself, though he was not under oath and not subject to cross-examination. Cf. United States v. Spangelet, 2 Cir., 1958, 258 F.2d 338; Nalls v. United States, 5 Cir., 1957, 240 F.2d 707; Snipes v. United States, 6 Cir., 1956, 230 F.2d 165.

The government seeks to justify the prosecutor's statement to the jury by arguing that defense counsel had asked the jury to draw an unwarranted inference of blameless intent from the failure of the prosecution to prove that there were more extensive deficiencies in this vast project. But if this was an unreasonable inference it would have been proper and would have sufficed for the prosecutor to say so and to explain to the jury why in logic the record did not lend itself to that inference. He might have asked, in the light of the defense argument, that the court explain to the jury that the government could properly restrict its charge and proof to a few occasions involving wrongdoing, whether there were or were not any other similar events. But he could not contradict the suggested inference by adding to the record his own unsworn presentation of additional facts. Even if the defense argument was improper, "[s]imilar latitude in respect to irrelevant matter permitted to counsel for the defendants neither vindicates nor palliates the license assumed by the prosecutors, nor lessens its destructive effect upon the fairness of the trial." See Pierce v. United States, 6 Cir., 1936, 86 F.2d 949, 953.

■ There was a second occurrence of the same kind during the closing arguments. There had been evidence that an independent private firm, rather than subordinates under the supervision of the defendant, had been entrusted with the large responsibility of day by day inspection of the many details of work in progress at Tobyhanna. Defense counsel argued to the jury that there had been no evidence that these inspectors had reported defects to the defendant which he had ignored. It was also argued that it would have been difficult for the defendant to have favored contractors unless he either circumvented the inspectors, ignored their reports of defects or acted in collusion with them; yet, there was no evidence of any such action. To meet this the prosecutor included the following statement in his final plea to the jury:

"There is also an attempt here to lay all the blame on the Architect-Engineer and blame all these other people, and Mr. Sheridan says: 'Where are they?' I will tell you where they are. They are under indictment. This man Gilboy is under indictment; Mr. Raff is under indictment; Mr. Brown of the Consolidated Construction Company is under indictment; Mr. Kemmel, the painter, is under indictment, and Mr. Laurelli was indicted. I mean, we are doing all we can. We have got about fourteen of them out there."

The gravely prejudicial effect of the introduction of this additional evidence in the prosecutor's closing appeal to the jury cannot reasonably be disputed. However, the government here and the court below have reasoned that this ordinarily grave impropriety was justified by the inferences defense counsel had asked the jury to draw from the lack of any evidence that the numerous inspectors on the job were either involved or circumvented in Tucker's alleged acceptance of patently inferior work. But the prosecutor's statement was objectionable in at least three respects. First, he was adding unsworn testimony after the prosecution had closed. Second, the fact that inspectors had been indicted was no proper evidence of their complicity in any wrongdoing, although the laymen of the jury were almost certain so to regard it. Third, even if inspectors had been convicted of criminal conduct this, without more, would not involve the defendant.

We are unable to escape the conclusion that these prejudicial statements by the prosecutor to the jury constituted reversible error and require that this case be

remanded for a new trial. Turner v. United States, 8 Cir., 1929, 35 F.2d 25; People v. Ford, 1948, 89 Cal.App.2d 467, 200 P.2d 867.

█ Because there will be a new trial, another impropriety should be mentioned in order that it may not be repeated. This case has already been tried twice. During the first trial a witness asserted his privilege against self incrimination when asked about transactions relevant to this prosecution. At the second trial, which led to the present appeal, this witness was again called and subjected to similar inquiry. He again pleaded privilege. There is no suggestion that the government had any reason to believe that at the second trial the witness would answer those questions he refused to answer at the first trial. In similar circumstances, two courts of appeals have already warned that a second interrogation, which has no apparent purpose but to invite invocation of the privilege against self incrimination, is improper and is likely to constitute reversible error. See United States v. Amadio, 7 Cir., 1954, 215 F.2d 605, 613; United States v. Five Cases, etc., 2 Cir., 1950, 179 F.2d 519, 523. On a third trial of this indictment, the witness in question should not be interrogated about any matter to which the government has reason to believe he will interpose a proper plea of self incrimination. In our view an interrogating official himself gravely abuses the privilege against self incrimination when, believing a truthful answer will incriminate a witness, he nevertheless insists on asking the incriminating question with a view to eliciting a claim of privilege and thereby creating prejudice against the witness or some other party concerned.

Finally, we rule without discussion upon a contention that the defendant was compelled to be a witness against himself before the grand jury which subsequently indicted him. The record does not sustain this contention.

The judgment will be reversed and the cause remanded for a new trial or such other proceedings as may be consistent with this opinion.