Commonwealth *v.* Albert, Appellant.

Argued April 10, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Louis C. Glasso,* for appellant.

*William Claney Smith,* Assistant District Attorney, with him *Edward C. Boyle,* District Attorney, for Commonwealth, appellee.

OPINION BY WATKINS, J., June 13, 1962:

This is an appeal from the judgment and sentence of the Court of Quarter Sessions of the Peace and General Jail Delivery for the County of Allegheny, entered on a verdict of a jury finding the defendant-appellant, Richard Albert, guilty of the charge of lottery; and from the order of the said court dismissing his motion for a new trial.

On March 10, 1960, Richard Albert, the appellant, was arrested on a charge of operating a lottery and convicted on September 5, 1961. After the refusal of his post trial motion he was sentenced to pay the costs of prosecution, a fine of $500 and undergo imprisonment for six to twelve months in the Allegheny County workhouse.

The facts necessary for the determination of the questions involved in this appeal are as follows: The defendant had been under police surveillance for one year prior to his arrest. The Hill Top News and Confectionery, which business place was located in the 1900 block of Webster Avenue, Pittsburgh, owned and operated by the defendant's brother, Fred Albert, was also under such surveillance. He was arrested when operating a white Cadillac automobile in the company of a colored man by the name of James Hamilton. The police testified that they had observed the defendant, carrying a brown shopping bag, and Hamilton coming out of a store owned by his brother and enter the front seat of the white Cadillac car. Upon stopping the car and taking the defendant and Hamilton into custody, an examination of the bag found on the front seat beside the defendant, disclosed it contained 965 number slips, indicating a total play of $2255.25. The defendant admitted being in and coming out of his brother's confectionery store. He testified that Hamilton, not he, had carried the bag from the store to the car and that he had only agreed to give Hamilton a ride up the

hill. He admitted that he knew what number slips were because he played the numbers.

He complains that the court below erred in admitting into evidence prior lottery convictions of the defendant and testimony concerning such crimes and erred in permitting the prosecution to introduce testimony of defendant's alleged association with number writers and other persons under investigation.

On direct examination the defendant testified that he did not know what was in the shopping bag; that he did not have any knowledge concerning the operation of this particular lottery; that the incident resulting in his arrest was not a matter of design but of accident. On cross-examination the questions were directed toward the issue of knowledge and so he was asked how long he knew Hamilton and answered, three or four years; that he knew that he worked at his brother's store. When asked if he knew what work Hamilton did for his brother, he answered, "No, I couldn't tell you. I work for a living. I work at the Post War Activity. I am no numbers man."

As the court below said: "It is evident from defendant's direct examination and his answers made on the initial cross-examination that these answers were made for the purpose of convincing the jury that he had no knowledge of the operations of the number business except as a player and that his arrest on the charge for which he was then being tried was an accident or a mistake, as well as for establishing his own good character. Under this factual situation we are of the opinion that the objected to inquiry was pertinent for the showing of knowledge and in establishing his state of mind, intent, motive and purpose. Moreover, the cross-examination was proper and the truth of his answers to the questions asked was material in the consideration by the jury of the credibility to be given to the whole testimony of the defendant. Com. v. Dietrich, 65 Pa. Superior Ct. 599, 603.

"In Com. v. Wiswesser, 124 Pa. Superior Ct. 251, 265, it was held that after defendant has given evidence of his good character he may be cross-examined concerning crimes of a nature similar to that charged in the indictment not for the purpose of showing his criminal conduct or reputation or prior arrests, but of determining the truth or falsity of his testimony as a whole. To this same effect see also Com. v. Petrulli, 182 Pa. Superior Ct. 625 and Com. v. Comer, 167 Pa. Superior Ct. 537, 540." See also: *Com. v. Kline,* 361 Pa. 434, 438, 65 A. 2d 348 (1949).

"Great latitude is afforded the Commonwealth on its cross-examination of a defendant in a criminal case who takes the stand in his own behalf." *Com. v. Farley,* 168 Pa. Superior Ct. 204, 213, 77 A. 2d 881 (1951). Here, the defendant did not call any character witnesses but took the stand on his own behalf. His credibility is subject to attack the same as any other witnesses except as limited by the Act of March 15, 1911, P. L. 20, 19 PS §711, and the defendant contends his rights under that act were violated. "This indicates, however, a misapprehension as to the scope and purpose of that act, which was intended merely to prevent blackening a defendant's reputation or attempting to prove a disposition to commit crime, but if there is another legitimate purpose, as, for example in the present case, to show motive, the Act of 1911 does not prohibit the Commonwealth from such interrogation and from contradicting the defendant's denial by rebuttal testimony." *Com. v. Heller,* 369 Pa. 457, 463, 87 A. 2d 287 (1952). See also: *Com. v. Rouchie,* 135 Pa. Superior Ct. 594, 7 A. 2d 102 (1939), where this Court held that cross-examination which tended to show the commission of another crime was competent for the purpose of showing motive, design, intent and purpose.

As to the complaint alleging error in permitting testimony of defendant's alleged association with number,

writers and other persons under investigation, we can do no better than approve what President Judge REED said concerning it in his opinion: "Defendant, on cross-examination, admitted that he visited his brother's place of business at least twice a week and that he knew his brother was in the numbers business and that Hamilton worked for him but denied any knowledge of Hamilton being in the numbers business. He was then specifically asked as to whether, on two particular dates, November 17, 1959, and August 31, 1959, he had driven his white Cadillac car accompanied by Hamilton and on these occasions had met Anthony (Bones) Buono and Regal Pace as well as Sam and Gloria Grosso. This he emphatically denied. In rebuttal, over objection, the Commonwealth called witnesses who testified that on these dates defendant was observed driving his Cadillac, accompanied by Hamilton, and on November 17, 1959 meeting Pace and Buono and that on that occasion Hamilton carried a small brown bag from the Pace car to the Albert car, and further, that on August 31, 1959 he was observed driving, accompanied by Hamilton, in the same Cadillac automobile on Cochran Road, in Mt. Lebanon, and on this occasion they picked up a girl, Gloria, and then drove in the direction of Bridgeville, at which time a station wagon, driven by Anthony Buono, was also observed and then contact was lost with both cars. This testimony was offered and received in rebuttal for consideration by the jury as affecting the defendant's credibility and for the purpose of showing intentional meetings with Hamilton and that his activities on the day of his arrest was a part of his general pattern and design. In the light of defendant's answers on direct examination and his initial answers on cross-examination this rebuttal testimony was proper. For authority to this effect see Com. v. Grosso, 192 Pa. Superior Ct. 513, affirmed in 401 Pa. 549; Com. v. Comer, supra; Com. v. Petrulli, supra;

Com. v. Kline, supra, and Com. v. Wable, 382 Pa. 80, 84."

Judgment of sentence affirmed and it is ordered that appellant appear in the court below at such time as he may there be called and that he be by that court committed until he has complied with his sentence or any part thereof which had not been performed at the time the order of supersedeas was entered.