Van Voorhis, J.
The defendants were charged with killing Martin Funk on December 14, 1962, by inflicting fatal wounds upon him with a knife. They confessed to killing Funk during a robbery at Funk’s television repair shop. Defendant Pollock made admissions to persons who occupied an apartment with him that he had held up a store and stabbed the victim. He was not quoted as having identified the store or the victim. A Huntley hearing was ordered by the Appellate Division (26 A D 2d 684), and the trial court found that the confessions were voluntarily made.
Both defendants took the stand at the trial as well as upon the Huntley hearing. Pollock denied that he had participated in any robbery or homicide and denied ever having been at the premises where Funk was killed. Arnold also sought to establish an alibi. Both testified that their confessions were false and had been extracted from them by force. Each, in his confession, involved Earl James as an accomplice.
The conviction of appellants depended upon their confessions to the police, which is conceded by the District Attorney’s office and is apparent from an examination of the record. Arnold’s statement was that Pollock discussed the robbery beforehand with Earl James and himself, that James was carrying a gun and stood outside the “ furthest ” door of the television repair shop, apparently on watch while the robbery by Pollock and Arnold was perpetrated inside. Pollock’s confession stated that he went to the television shop with Arnold and James, and that James stood outside while the robbery was committed by Pollock and Arnold.
The chief error asserted in behalf of both appellants Pollock and Arnold consisted in the calling of Earl James to the witness stand by the Assistant District Attorney who, after inquiring his age, address and occupation, asked “Do you know *210 the defendant Herbert Pollock? ” At this point the attorney for James, who was present, made the following statement to the court:
‘‘ Mr. Kern: If your Honor please, for the record, I am Michael Kern, with offices at 37 Wall Street. I am an attorney at law. I represent this witness.
‘‘ Without any prefatory statement, the contents of which, if I made the statement, are well known to the District Attorney as well as defense counsel, I want to tell the Court that I have advised this witness to decline to answer any questions pertinent to the issues in this case on the ground that any answer that he might make may tend to degrade and incriminate him.”
Following that the court asked James whether he understood what his lawyer had just said, to which James replied in the affirmative, and the court told this witness that he had a right, under the law, to refuse to answer upon the ground that the answer might tend to incriminate him. The witness answered “ Yes, sir. I know him.” The witness’ attorney then said that the witness evidently did not understand, whereupon the court explained to him in greater detail that he had the right to refuse to answer any question asked by the prosecution if he believed that it would tend to incriminate him. He was again asked whether he knew the defendant Pollock, to which he refused to reply on the ground that it might incriminate him. He was then asked whether his answer would be the same to any question that might be put to him, to which he replied that he refused to answer on the ground that it might incriminate him. Then the Assistant District Attorney said ‘ ‘ Your witness.” After brief cross-examination by Pollock’s trial counsel, in which the witness refused to answer each question on the ground that the answer might tend to incriminate him, the court said: “Do you refuse to answer any questions pertaining to this alleged event of December 14th? ” to which the witness replied ‘‘ Yes, sir. ” Counsel for both appellants demanded that any previous statement made by James be produced by the prosecutor, but the court overruled this demand on the basis that the witness had not testified to anything of substance. The court then instructed the jury: “ The Court: Mr. Foreman and members of the jury, at this time I am instructing you, you are to disregard this witness’ testimony in its entirety. *211 You are not to speculate as to what might he in the witness’ mind, and certainly you are not to speculate as to what answers might be forthcoming were the witness to answer. In other words, you are not to speculate or guess about what this witness might say from the questions that were asked. The questions are not evidence in the case, and the answers—whatever answers he might have made, to the effect that it would tend to incriminate him and degrade him, you are to disregard that entirely. As far as this witness is concerned, disregard his testimony, and by all means, do not let it be prejudicial to either of the defendants on trial.”
Later during the trial, defense counsel moved for a mistrial on the ground that James, whom the confessions of both appellants described as an accomplice, was called to the stand solely in order that the jury might hear him claim his privilege and thereby, in the jurors’ minds, incriminate himself and, by inference, incriminate appellants also. Exceptions were duly taken on behalf of each appellant.
The question appears not to be settled in New York, and the Federal decisions regard this as reversible error in some instances but not in others. In the situation with which we are now confronted, a finding of guilt depends upon confessions or admissions against interest by appellants. Each implicates Earl James as a participant in the robbery which resulted in the killing. Earl James was called, to the witness stand by the prosecution, knowing that he would testify to nothing material without his invoking his privilege. The People argue that it was necessary for them to put him on the witness stand and ask him to testify concerning this crime in order to be freed from any imputation that his testimony would be adverse to the prosecution. Since he would hardly be expected by the jury to testify against his own interest by supporting the prosecution, that argument loses a good deal of weight. The Assistant District Attorney’s position could readily have been safeguarded by a ruling excluding the testimony of Earl James on condition that appellants stipulate that failure to call James was not to be regarded as implying that his testimony would have been adverse to the People’s case, or that anything said to the jury to the effect that omission to call James had any evidentiary signifi *212 canee would free the prosecution to tell the jury the reason on account of which he was not called.
Whatever may have been the motive of the Assistant District Attorney in calling James to the witness stand, the result was clearly to implant in the minds of the jurors that the facts stated in appellants’ confessions were true, since from refusing to answer questions regarding the robbery upon the ground that his testimony might tend to incriminate him the jury must have concluded that James actually did play the role in these criminal transactions that was assigned to him in Pollock’s and Arnold’s confessions. This was not a situation where Earl James testified to other facts relating to the criminal charge and where his claim of privilege related to some unimportant or collateral aspect. The voluntariness of these confessions was sharply contested by both, and each denied participation in ,the event when called as a witness at the trial. It is apparent that this claim of privilege by Earl James was, in its effect, the most incriminating evidence that was introduced against appellants.
The case of Fletcher v. United States (332 F. 2d 724 [CCA, D. C., 1964]) is almost exactly in point and resulted in a reversal of the conviction. The United States Supreme Court’s decision entitled Namet v. United States (373 U. S. 179 [1963]) is distinguished in Fletcher, as it is distinguishable here, in that in Namet the Supreme Court pointed out that most of the testimony of the witness was not privileged and that an inference of guilt was already well established by the nonprivileged portion of the witness’ testimony. The four questions to which the witness claimed privilege were regarded as incidental or collateral by the Supreme Court and were referred to in the Supreme Court’s opinion as “ these few lapses ” in the context of the entire trial. Reversing in Fletcher, the District of Columbia. Court of Appeals pointed out that the claim of privilege by the witness was the principal source of support for the testimony of the Government’s only other witness, and that the refusals to testify were not incidents in the course of other admissible testimony since the one claiming privilege gave no other testimony.
The Court of Appeals in the Third Circuit likewise reversed the conviction in United States v. Tucker (267 F. 2d 212 [1959]). There it was held, under the circumstances of that case, that *213 where a witness has been asked a question on a first trial and has asserted his privilege against self incrimination, it is improper on a second trial again to ask the witness the same question when there is no reason to believe that he will answer after refusing to do so at the first trial. The case involved the prosecution of an Army officer on a charge of accepting gratuities with intent to influence his official decisions and actions in connection with the construction of a signal depot. The reversal was based upon other grounds, but “ Because there will be a new trial,” said the court (p. 215), “ another impropriety should be mentioned in order that it may not be repeated.” The court cited United States v. Amadio (215 P. 2d 605) and United States v. 5 Cases (179 P. 2d 519) and said, concerning this, that an interrogating official gravely abuses the privilege against self incrimination where the questioning is for the purpose of ‘‘ eliciting a claim of privilege and thereby creating prejudice against the witness or some other party concerned.”
The most highly articulated opinion on this subject is by Judge Learned Hand, speaking for the majority of a divided court in the Second Circuit, in United States v. Maloney (262 P. 2d 535 [1959]). The court said that when a witness claims his privilege, a natural, indeed an almost inevitable, inference arises as to what would have been his answer if he had not refused. ‘ ‘ If the prosecution knows when it puts the question that he will claim the privilege,” the court said (p. 537), “ it is charged with notice of the probable effect of his refusal upon the jury’s mind.” The opinion said further: “ The prosecution replies that, if it is forbidden to put the question, the jury may well assume that the witness, if called, would testify for the accused, and that this inference too would be unfair. We must confess that the situation is one in which either alternative results in prejudice to one side or the other; and it is impossible, so far as we can see, to lay down any general rule that will cover all instances. In the case at bar * * * it seems to us that the interest of the accused should prevail over that of the prosecution, and that the judgment should not stand, for the questions touched vital elements of the charge.” The court continued by stating that if the accused at any stage of the trial were to argue that the failure to call such a witness indi *214 cated that he or she would not support the charge, the prosecution should be free to disclose the fact that it had reason to suppose that the witness would refuse to testify on the ground of self incrimination.
The court reversed the conviction ostensibly for the reason that the court gave no admonition to the jury that they must not use the refusal to testify as evidence of what the answer would have been. The court conceded (p. 538) that to ask the members of a jury to disregard such a claim of privilege is to impose upon them ‘‘ a task beyond their powers ’ ’, and that the situation is, in substance, the same as when a Judge tells the jury not to consider the confession, or admission, of one defendant in deciding the guilt of another, tried at the same time. But, said the court, “ since it is settled that this rubric will cure that error (Delli Paoli v. United States, 352 U. S. 232 * * *), we do not see why it should not cure the error here. We rest our decision therefore upon the fact that the accredited ritual was not followed; and surely, if it is ever to be taken seriously, there could hardly be an occasion when it was more necessary ”.
In our view the situation is not entirely analogous to where a confession of a codefendant is introduced into evidence which implicates an alleged accomplice. We have ruled in People v. Vitagliano (15 N Y 2d 360) that where several defendants are tried together and no motion for severance has been made a confession should be redacted where the portion of it is severable which implicates a codefendant, but that where the admission of guilt by a defendant is so interrelated in the involvement of an accomplice as to render it impossible for practical purposes to separate them, there is no alternative but to receive the confession and then for the court to instruct the jury to consider it only as against the one who had confessed, disregarding the implication of anyone else in the commission of the crime. We have held in People v. La Belle (18 N Y 2d 405) that reversible error may consist in the denial of a motion for severance and for separate trials of defendants in instances where confessions implicate codefendants, but no motions were made for severance here. Since we consider that a new trial must be had on account of the calling of Earl James in order to put his claim of privilege before the jury, the question of a severance might well be con *215 sidered by the trial court, on account of these confessions, before appellants are again required to. proceed to trial.
The refusal of the Trial Justice to compel production from the District Attorney’s files of statements previously taken of Earl James was correct. He had testified to nothing of consequence and, therefore, there was no requirement that these statements be produced under People v. Rosario (9 N Y 2d 286).
Although there is much testimony given by appellants with respect to beatings and other forms of coercion in the police station, these were denied by the police officers and these statements have been found as a fact to have been voluntarily given both upon the trial and at the Huntley hearing.
The judgments appealed from should be reversed and a new trial granted as to both of the defendants.