515 A.2d 625

Edwin A. Peeples, III, Appellant *v.* Commonwealth of Pennsylvania, Appellee.

24

Submitted on briefs August 11, 1986, to Judges MACPHAIL, DOYLE and BARRY, sitting as a panel of three.

*Edwin A. Peeples, III,* appellant, for himself.

*Charlotte M. Rodriguez,* for appellee.

OPINION BY JUDGE DOYLE, September 25, 1986:

This is an appeal by Edwin A. Peeples, III (Peeples) from an order of the Court of Common Pleas of Chester County denying Peeples' motion in arrest of judgment and hence upholding its prior conviction of Peeples for failing to file a final earned income tax return pursuant to a local ordinance[1] enacted under Section 2 of The

---

[1] The local resolution enacting the tax in question was adopted on May 20, 1968. It enacts a one percent tax on "earned income

Local Tax Enabling Act, Act of December 31, 1965, 'P.L. 1257, *as amended,* 53 P.S. §6902 (Tax Act).

A criminal complaint was lodged against Peeples on February 1, 1984 alleging that he had failed to file his 1982 earned income tax return "as required under Act 511 of the Pennsylvania Legislature, entitled, 'The Local Tax Enabling Act', (Act of December 31, 1965, P.L. 1257), as amended." The complaint did not specifically refer to the local ordinance. Peeples objected to the complaint as not giving him notice of any violation of the local ordinance. The trial court, pursuant to Pennsylvania Rule of Criminal Procedure 70, (now designated Pennsylvania Rule of Criminal Procedure 90) permitted an amendment which we hold, contrary to Peeples' assertion, does not constitute an abuse of discretion inasmuch as it was clear from the complaint that the failure to file a local tax return was the charge.

Pursuant to Section 13 of the Tax Act, 53 P.S. §6913, conviction for failure to file subjects the individual to a fine of up to $500.00 plus costs and, in default of payment, to imprisonment for a period not exceeding thirty days. The district justice found Peeples guilty of the offense and fined him $500.00. Peeples appealed to the common pleas court and filed a motion for a jury trial, which was denied. At a July 31, 1984 hearing the Commonwealth in support of its burden offered into evi-

---

received and net profits earned by individual residents" of the Owen J. Roberts School District (District). The resolution also adopts the definitions for "earned income" and "net profits" which are set forth in Section 13 of The Local Tax Enabling Act, Act of December 31, 1965, P.L. 1257, *as amended,* 53 · P.S. §6913 (Tax Act). It further provides for suits for collection of taxes and penalties as provided in Section 13 of the Tax Act. The resolution was readopted for the 1981-82 school year at the District's regular monthly meeting on July 15, 1981 and readopted for the 1982-83 school year at the District's regular monthly meeting on June 1, 1982.

dence the local ordinances establishing the one percent tax and the local ordinances appointing Berkheimer Associates as its tax collector. It also submitted into evidence a copy of the final income tax return form and general instructions mailed to Peeples and a copy of the "return of delinquent tax" form mailed to Peeples. It was stipulated that Peeples received these two forms, although they are missing from the original record certified to this Court. In addition, the Commonwealth at a September 24, 1984 hearing in court presented the testimony of Barbara Ann Miller, office manager of the Pottstown office of Berkheimer Associates, who testified that Peeples had not filed a final earned income tax return for 1982.

Another hearing was held on October 10, 1984 during which, *inter alia,* Peeples, in a colloquy with the court, indicated that he wished to testify. Also during this colloquy Peeples was advised that if he did in fact testify he would be subject to cross-examination. N.T. 8-10. Peeples then took the stand and stated that he was confused about whether he had to pay the tax. Specifically, he testified that the law requires every resident to file a tax return "who received or anticipates that he will receive taxable earned income in the form of earnings or net profits during the calendar year." N.T. 12. He further explained, "[h]aving, as far as I can see, received no earned no [sic] income or expecting to receive no earned income, I don't see how that—this would raise some questions to doubt as to whether I was required to file." Immediately after this statement the following colloquy occurred:

>   THE COURT: Do you work?
>
>   THE WITNESS: No. This doesn't say to work.
>
>   THE COURT: Do you work?
>
>   THE WITNESS: Do I work?

THE COURT: Did you work? Did you work?

THE WITNESS: That has not been proven.

THE COURT: I ask you did your [sic] work in 1982?

THE WITNESS: Since I am under a criminal investigation, I sustain [sic] from answering that.

THE COURT: Sir—

THE WITNESS: Because it has not been proven.

THE COURT: I instruct you that in criminal cases, you do not have a fifth amendment right to remain silent. This is a criminal case. I instruct you to answer me. Did you work in 1982?

THE WITNESS: I believe I did.

THE COURT: Any question in your mind as to whether you did, sir, or is it just a vague belief?

THE WITNESS: I worked in 1982.

THE COURT: For whom did you work?

THE WITNESS: I believe that's privileged information.

THE COURT: I don't. For whom did you work?

THE WITNESS: Myself.

THE COURT: And in what capacity, sir? What did you do?

THE WITNESS: I object, Your Honor.

THE COURT: Objection overruled. What did you do?

THE WITNESS: I operated in the capacity of a consultant and a representative, marketing representative.

THE COURT: As such, sir, I gather you have a certain expertise in the area of marketing and

people consider your wisdom, your thoughts to be of value; is that correct?

THE WITNESS: That's true.

THE COURT: And in order to have the benefit of your thinking on various subjects, they invite you to share your wisdom with them. Is that correct, sir?

THE WITNESS: That's true.

THE COURT: And, indeed, they deem your thoughts to be so valuable as to be capable and deserving of being recompensed by the coin of the realm. Is that correct, sir? In other words, they want to pay you for your thoughts as placed upon paper in counseling them and consulting with them. Is that correct, sir?

THE WITNESS: Compensation, yeah.

THE COURT: Monetary compensation, is that correct, sir?

THE WITNESS: Often yes.

THE COURT: And, indeed, in 1982, they compensated you. Is that correct, sir.

THE WITNESS: Yeah.

THE COURT: How much did they pay you in 1982 roughly?

THE WITNESS: I don't know.

THE COURT: Was it more than a dollar?

THE WITNESS: I would presume so, yes.

The trial court misstated the law, of course. It is absolutely clear that a criminal defendant *does* have a constitutional right under both state and federal law to remain silent. *Commonwealth v. Camm,* 443 Pa. 253, 277 A.2d 325 (1971), *cert. denied,* 405 U.S. 1046 (1972). Peeples thus asserts on appeal a constitutional error with respect to the trial court's statement and its insistence that Peeples answer questions. Despite the single unfortunate colloquy, which we are certain was

an inadvertent misstatement by the learned trial judge, we are of the view that under the limited facts present here this misstatement actually constitutes harmless error.

Our Supreme Court considered the question of self-incrimination as applied to a criminal defendant in *Camm*. In *Camm* the defendant took the stand for the limited purpose of showing that his confession was co-erced and his counsel made it clear that he was calling his client on the voluntariness issue only and that the defendant was not waiving his fifth amendment privilege against self-incrimination. The issue, as phrased by the *Camm* court on appeal, concerned "the status of the privilege [against self-incrimination] of a defendant who does take the stand to testify on his own behalf, but for a limited purpose; specifically, whether the privilege against self-incrimination was waived for all purposes when Camm testified to the events surrounding his arrest, detention, interrogation and confession." *Id.* at 263-64, 277 A.2d at 330.

In interpreting prior caselaw to resolve this issue the *Camm* court wrote:

> We think . . . if a defendant takes the stand and opens an area of inquiry, he cannot claim the privilege when, on cross-examination, he is interrogated in that particular area, and that wide latitude should be allowed in cross-examination.

*Id.* at 264, 277 A.2d at 330-1. (Footnote omitted.)[2]
The *Camm* court further opined:

> A defendant cannot protect himself against wide-ranging cross-examination merely by an-

---

[2] The reasoning of *Camm* has been repeatedly relied upon by the appellate courts. *See Commonwealth v. Jordan*, 333 Pa. Superior Ct. 291, 482 A.2d 573 (1984); *Commonwealth v. Guyton*, 230 Pa. Superior Ct. 168, 326 A.2d 913 (1974) (*allocatur* refused); *Cotter v. State Civil Service Commission*, 6 Pa. Commonwealth Ct. 498, 297 A.2d 176 (1972).

nouncing that he is taking the stand solely to refute the voluntariness of his confession. On the contrary, he subjects himself to good-faith cross-examination and the discretionary rulings of the trial judge as to the permissible scope of that cross-examination. In deciding to take the stand, the defendant must weigh the risks of so doing against the risks of not doing so.

*Id.* at 265, 277 A.2d at 331.

We believe that in the instant case the good faith effort of the trial court to understand Peeples' position is evident in the questions. Peeples testified on direct that in his view he had received no income subject to the tax in 1982. The trial court's inquiry as to whether Peeples worked and received remuneration during that period is thus within the appropriate field of inquiry. Accordingly, we hold that under *Camm* Peeples waived his fifth amendment privilege at least with respect to matters he had testified to on direct examination and hence, the trial court's statement that he had no such privilege, *which came after he had testified on direct without invoking the privilege,* is harmless error.

Peeples asserts several other issues on appeal which can be disposed of summarily. One incurs no right to a jury trial in any case where the maximum imprisonment is six months or less. *Commonwealth v. Mayberry,* 459 Pa. 91, 327 A.2d 86 (1974) (citing *Codispoti v. Pennsylvania,* 418 U.S. 506 (1974)). Thus, the trial court was entirely correct in its determination of this issue.

Next, Peeples contends that the tax in question is in violation of the Constitution because it attempts to tax the source of income, not the income itself. He relies on *Pollock v. Farmers' Loan & Trust Co.,* 158 U.S. 601 (1895). As to this contention and attendant citation the trial court wrote:

That case holds that an income tax upon rents or income of real estate or personal property is a

direct tax, which, under Art. 1, §8 of the Constitution must be uniform throughout the United States, and which, under Art. I, §9, must be laid in proportion to the census, and that since such income tax was not so proportioned, it was unconstitutional. The opinion contains an express invitation to the Congress to amend the Constitution, should they see fit. This was accomplished in 1913, with the enactment of the Sixteenth Amendment ('The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration.') Thus, the holding of Pollock, to the chagrin of many a taxpayer, to include prospective taxpayer, Mr. Peeples, is no longer the law.

(Slip. op. pp. 2-3, footnote).

We agree completely and could not improve on the trial court's explanation of the fallacy of Peeples' argument.

It is clear that pursuant to Section 13 of the Tax Act, earned income is defined to include, *inter alia,* "salaries, wages, commissions and bonuses. . . ." These definitions are exclusive, *id.,* and as indicated in footnote 1 were specifically adopted by the local resolution. Thus, we flatly reject Peeples' argument that compensation is not earned income.

Having carefully examined the arguments raised by Peeples in this case we cannot help but understand the frustration of the trial court when it told Peeples:

You have been litigating a position that is patently frivolous. If you are going to be a citizen in our society, you have to pay the piper. . . . I only regret, as I understand the law in the criminal context—and that is the context in which this prosecution is technically labeled—I cannot as-

sess counsel fees against you for pressing what, in my view, is an utterly frivolous, vexatious position, bereft of a scintilla of legal merit. You have been the epitome of a tax deadbeat. . . . (N.T. 15-16, August 21, 1985).

Affirmed.

## ORDER

Now, September 25, 1986, the order of the Court of Common Pleas of Chester County in the above captioned matter is hereby affirmed.