In the Interest of M.W.

Appeal of M.W.

Superior Court of Pennsylvania.

Submitted March 2, 2009.

Filed May 5, 2009.

Carrie L. Allman, Public Defender, Pittsburgh, for appellant.

Michael W. Streily, Deputy Dist. Atty., Pittsburgh, for the Com., appellee.

BEFORE: GANTMAN, ALLEN, and FREEDBERG, JJ.

OPINION BY FREEDBERG, J.:

¶ 1 Appellant, M.W., appeals from the dispositional order entered on May 8, 2007, by the Juvenile Division of the Court of Common Pleas of Allegheny County. For the reasons discussed below, we affirm.

¶ 2 The relevant facts and circumstances underlying this case are taken from the juvenile court's opinion dated September 26, 2008.

On March 20, 2007, Sergeant Larry Scirotto, a thirteen (13) year veteran of the City of Pittsburgh Police Force, was working a 3 P.M. to 11 P.M. shift. See Hearing Transcript dated 4/19/07 at page 19. (hereafter "H.T.") Sergeant Scirotto and two (2) fellow police officers (Officers Smith and Sullivan) were conducting foot patrol in the Chauncey

Drive Section of the Hill District in the City of Pittsburgh. (H.T. 19) That area had recently been targeted for such patrols because of high drug trafficking and gun violence. (H.T. 19)

At one point during the patrol, Sergeant Scirotto was informed by Officer Smith that, as officers approached, two (2) males had run from the sidewalk on Chauncey Drive into an adjacent courtyard of the housing project. (H.T. 20, 26–27) In response, the officers entered the courtyard and Sergeant Scirotto observed Appellant standing at the doorway of a building apparently having attempted, or contemplating, entry into that building. (H.T. 20, 28) Appellant was dressed in black jeans, a t-shirt and a puffy, thick denim-type jacket. (H.T. 21, 28) Appellant was unable to enter the building because the building had a security door which was locked. (H.T. 20, 208) Appellant looked back at Sergeant Scirotto and made a quick movement with his hand to the front waistband and pocket area of his pants. (H.T. 20, 29) Appellant then turned toward Sergeant Scirotto and Officer Smith, and Sergeant Scirotto noticed Appellant's right hand was now underneath his jacket in the front waistband area of his pants. (H.T. 20–22, 28–29) Sergeant Scirotto, based on his knowledge that gun violence and drug activity were prevalent in this area, believed that Appellant could be concealing and have immediate access to a weapon. (H.T. 20, 26). Consequently, Sergeant Scirotto ordered Appellant to the ground. (H.T. 20, 28) Appellant did not comply and started to move toward a second doorway in the courtyard. (H.T. 29) Sergeant Scirotto ordered Appellant to the ground a second time at which time Appellant did comply. (H.T. 20) Appellant layed (sic) down with his left arm outstretched, however he kept his right hand underneath his body. (H.T. 20–21, 28–29).

Still concerned for his safety, as well as that of his fellow officers, Sergeant Scirotto ordered Appellant to put both his hands behind his back. Appellant did not comply, however Sergeant Scirotto was able to secure Appellant's left hand behind his back. (H.T. 21–22) Sergeant Scirotto again ordered Appellant to bring his right hand out from underneath his body, but Appellant again refused to comply. (H.T. 22) Sergeant Scirotto was able to grab and place Appellant's right hand behind Appellant's back. (H.T. 22)

Sergeant Scirotto then performed a patdown search of the front waistband and pocket area of Appellant's pants for officer safety. (H.T. 22, 29) The pat-down did not yield a weapon, but in the course of patting down Appellant's waist band and front pocket area, Sergeant Scirotto felt a chunky, golf ball size object in Appellant's right front pants pocket. (H.T. 22, 25) Based on his training and experience, Sergeant Scirotto recognized this to be crack cocaine. (H.T. 22, 24, 30) Not only was Sergeant Scirotto a thirteen-year veteran of the Pittsburgh Police force, but he had also served in the narcotics unit and made several hundred narcotics arrest during his service. (H.T. 23)

Appellant was placed under arrest and searched. No drug paraphernalia indicative of personal use was found incident to that search. (H.T. 24) As Sergeant Scirotto was placing Appellant under arrest and searching Appellant, Sergeant Scirotto was talking to Officer Smith about the crack cocaine just seized. Appellant gratuitously interjected himself into that conversation, stating that he didn't use the crack cocaine, but was "just trying to take care of my family." (H.T. 24)

The seized material that Sergeant Scirotto believed to be crack cocaine was submitted to, and analyzed by the Allegheny County Crime Lab. (H.T. 33) The crime lab confirmed the chunky white material to be crack cocaine weighing 4.90 grams. (See Commonwealth Exhibit 1; H.T. 33)

Juvenile Court Opinion dated 9/26/08 at 4–7.

¶ 3 Following a hearing, on April 19, 2007, Appellant was adjudicated delinquent on charges of possession with intent to deliver[1] and possession of crack cocaine.[2] Appellant was committed to ABRAXAS by order dated May 8, 2007.

■ ¶ 4 Appellant filed the current, timely appeal. Appellant was ordered to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Accordingly, Appellant filed a timely 1925 statement and the juvenile court subsequently issued its Opinion.

¶ 5 On appeal Appellant raises one issue for our review:

Did the lower court commit reversible error where it permitted the minor to be questioned on matters that were not only outside the scope of direct examination, but also incriminating, and where the lower court stated that the juvenile had no constitutionally recognized right against self incrimination?

Appellant's Brief at 5.

¶ 6 At the delinquency hearing, following the close of the Commonwealth's case, defense counsel stated that, "I would call my client on a limited basis with regard to our own case." H.T. 4/19/07 at 34. Defense counsel did not specify what the limited basis was and did not seek any ruling limiting cross-examination. Further, defense counsel did not make any explicit statement on the record that he was re-serving his client's Fifth Amendment rights. Defense counsel proceeded with direct examination asking Appellant several questions related to the statement made to Sergeant Scirotto. On cross-examination, the Commonwealth asked Appellant, "[d]id you in fact have crack cocaine in your pocket?" *Id.* at 36. The following exchange then took place between defense counsel and the juvenile court.

Mr. McWilson: Objection; beyond the scope of direct examination. The only issue put forward is the statement that Officer Scirotto claims my client made.

The Court: You can't call him and limit the cross-examination. That is not the way it works. She can ask the question.

Mr. McWilson: Actually she can't because she would be asking that he incriminate himself, and he has the right not to answer that question or incriminate himself. I believe it to be an inappropriate question. He can certainly refuse to answer and if he does—even if he doesn't refuse to answer, Your Honor, I believe the question to be inappropriate. I understand your finding with regard to my objection. However, the suggestion would be that there is no scope of direct exam or cross exam, but there aren't any limitations in that kind of matter and I don't believe the case law has gone quite that far yet.

The Court: You can't call your client for one purpose and not allow inquiry, assume the Court is not going to allow cross-examination on any related matters. Certainly that is a matter of law. Once he testifies and he exposes himself to fair and legitimate cross-examination on the issues in the case, and that is one of the main issues in the case. If [he] refuses to answer, that is up to him. I am not acknowledging his refusal on any

1. 35 P.S. § 780–113(a)(30).

2. 35 P.S. § 780–113(a)(16).

constitutional basis because it does not exist.

*Id.* at 36–37.

■ ¶ 7 This Court has recently reiterated the proper standard to apply when reviewing a challenge to the scope of cross-examination.

The scope and manner of cross-examination are within the sound discretion of the trial court and will not be overturned unless the court has abused that discretion.

*Commonwealth v. Nunn,* 947 A.2d 756, 761 (Pa.Super.2008) (citations omitted), *appeal denied,* 947 A.2d 756 (Pa.Super.2008). Further, we have generally defined the scope of cross-examination to include "inferences, deductions, or conclusions which may be drawn therefrom, which explain or destroy the effect of direct testimony." *Nunn,* 947 A.2d at 762 (citation omitted). Additionally, although a defendant in a criminal proceeding may refuse to take the witness stand based upon the constitutional privilege against self-incrimination, a criminal defendant who takes the witness stand waives this privilege for purposes of cross-examination. *Brown v. United States,* 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958).

¶ 8 Pa.R.E. 611 provides in relevant part:

**Mode and order of interrogation and presentation**

**(a) Control by court.** The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time and (3) protect witnesses from harassment or undue embarrassment.

**(b) Scope of cross-examination.** Cross-examination of a witness other than a party in a civil case should be limited to the subject matter of the direct examination and matters affecting credibility; however, the court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination. A party witness in a civil case may be cross-examined by an adverse party on any matter relevant to any issue in the case, including credibility, unless the court, in the interests of justice, limits the cross-examination with respect to matters not testified to on direct examination.

Pa.R.E. 611(a) and (b). As explained in Packel and Poulin, *Pennsylvania Evidence,* 3rd Edit., Rule 611, comment at 663:

[w]hen the accused in a criminal case is the witness, there is an interplay between the limited scope of cross-examination and the accused's privilege against self-incrimination. When the accused testifies generally as to facts tending to negate or raise doubts about the prosecution's evidence, he or she has waived the privilege and may not use it to prevent the prosecution from bringing out on cross-examination every circumstance related to those facts. *See Commonwealth v. Green* 525 Pa. 424, 581 A.2d 544 (1990). However, when the accused's testimony is more selective or limited, the waiver of the privilege is only coextensive with the permissible scope of cross-examination relative to the accused's direct testimony; it is not a general waiver. *See Commonwealth v. Camm,* 443 Pa. 253, 277 A.2d 325 (1971); *Commonwealth v. Ulen,* 414 Pa.Super. 502, 607 A.2d 779 (1992), *rev'd on other grounds,* 539 Pa. 51, 650 A.2d 416 (1994).

*Id.*

¶ 9 Appellant relies on the Pennsylvania Supreme Court's decision in *Commonwealth v. Camm,* 443 Pa. 253, 277 A.2d 325

(1971), for support of his assertion that the question asked by the Commonwealth was beyond the scope of direct examination, and, thus, the Appellant had a Fifth Amendment right to invoke the privilege against self-incrimination with respect to the question. In *Camm*, the defendant made a formal written and oral statement to the police some fifteen hours after the incident took place and following the defendant's waiver of his constitutional rights. Prior to calling the defendant to the stand, counsel specified that he was calling the defendant to testify only with respect to the voluntariness of his confession. *Id.*, at 329. Counsel stated that his client was not waiving his right against self-incrimination and sought a ruling from the trial court as to the permissible scope of cross-examination. *Id.* The trial court declined to make such a ruling, stating that it would rule on matters as they came up. *Id.* When the defendant took the stand, he also testified that it was his intention to invoke the privilege against self-incrimination with respect to the events of the alleged crimes. *Id.* During his cross-examination, the defendant either objected to the questions or invoked his Fifth Amendment privilege on numerous occasions; the trial court sustained the invocation of the privilege about half the time.

¶ 10 The Pennsylvania Supreme Court, while disagreeing with the Superior Court's assertion that Appellant had completely waived the privilege, held that when a defendant takes the stand and "opens an area of inquiry, he cannot claim the privilege when, on cross-examination, he is interrogated in that particular area, and that wide latitude should be allowed in cross-examination." *Id.* at 331. The Supreme Court further stated:

[a] defendant cannot protect himself against wide-ranging cross-examination merely by announcing that he is taking the stand solely to refute the voluntariness of his confession. On the contrary, he subjects himself to good-faith cross-examination and the discretionary rulings of the trial judge as to the permissible scope of that cross-examination. In deciding to take the stand, the defendant must weigh the risks of so doing against the risks of not doing so. Since, in the case before us, there was no advance ruling by the court on the consequences of Appellant taking the stand and there was no agreement by the district attorney not to cross-examine, we find no prejudice of which Appellant can now complain.

*Id.*

¶ 11 Here, as noted above, Appellant did not specify the nature of the limited direct examination, did not seek an advance ruling with respect to the scope of cross-examination prior to testifying, and did not state that he was invoking his Fifth Amendment privilege prior to testimony.

¶ 12 Further, unlike in *Camm*, Appellant was testifying about a spontaneous utterance made incident to his arrest at the scene of the crime. Thus, it was all but impossible to separate the statement itself from the underlying crime because it was part and parcel of the context of the event. As the Commonwealth correctly notes, whether or not Appellant possessed the crack cocaine was relevant to assessing the credibility of both Sergeant Scirotto's and Appellant's testimony. The juvenile court had to determine whether Appellant made the statement. The Commonwealth's question to Appellant regarding whether he had cocaine in his pocket was relevant to resolving the issue. Appellant's admission that he did possess the crack cocaine made Scirotto's testimony that he did make the statement more credible, as it showed Appellant's reason for making what he believed to be a mitigating statement. Thus, we find that the juvenile court did not abuse its discretion in allow-

ing the Commonwealth to cross-examine Appellant on this issue.

¶ 13 Appellant also argues that the juvenile court wrongly stated that juveniles have no Fifth Amendment right against self-incrimination. However, this argument misstates the record. The juvenile court did not make any statement with respect to whether or not Appellant or juveniles as a class have a Fifth Amendment privilege. When the juvenile court's statement is read in context, it is evident that the juvenile court was stating that Appellant had waived his Fifth Amendment right by taking the stand. Thus, we see no basis for the Appellant's claim of error.

¶ 14 For all of the foregoing reasons, we find that Appellant's claim lacks merit. Accordingly, we affirm.

¶ 15 Order **AFFIRMED.** Jurisdiction **RELINQUISHED.**