J-A05030-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| SANDRA S. LLOYD AND ROBERT LLOYD, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellants | |
| v. | |
| KEVIN J. BELL AND CLARENCE D. BELL, JR., | |
| Appellees | No. 1807 EDA 2014 |

Appeal from the Judgment entered May 13, 2014,
in the Court of Common Pleas of Chester County,
Civil Division, at No(s): 11-02039

BEFORE:  GANTMAN, P.J., SHOGAN, and ALLEN, JJ.

MEMORANDUM BY ALLEN:                    **FILED MARCH 03, 2015**

Spouses Sandra S. and Robert Lloyd, ("Mrs. Lloyd", or collectively, "Appellants"), appeal from the judgment entered against them and in favor of Kevin J. Bell, ("Bell")[1].  We affirm.  Further, we deny Bell's motion to quash and/or dismiss this appeal for the reasons cited below.

In disposing of a prior appeal in this matter, we detailed the following factual and procedural background:

> On February 27, 2009, [Mrs.] Lloyd was involved in a motor vehicle accident when Bell rear-ended the car [Mrs.] Lloyd was driving.  The parties dispute the force of impact.  [Mrs.] Lloyd's airbag did not deploy, and her car was driven from the scene of the accident.  However, [Mrs.] Lloyd subsequently testified that

---

[1] As noted below, by stipulation of the parties, Clarence D. Bell, Jr., was dismissed from this action prior to the commencement of trial and is not involved in this appeal.

the car was totaled. Following the accident, [Mrs.] Lloyd received treatment for neck and back pain. Thereafter, [Appellants] initiated this action, asserting [Mrs.] Lloyd suffered injuries in the accident.

A jury trial commenced. [FN2: Prior to the commencement of trial, Bell's father and co-defendant, Clarence D. Bell, was dismissed from this action by stipulation.] Bell admitted negligence at trial but disputed [Mrs.] Lloyd's claim of injury, as [Mrs.] Lloyd had an extensive, pre-accident medical history of back and neck problems.

The parties' medical experts agreed that there was no objective evidence that the accident exacerbated [Mrs.] Lloyd's physical condition. However, Jeffrey Friedman, M.D., who testified on behalf of [Appellants], opined that [Mrs.] Lloyd suffered from myofascial pain syndrome and fibromyalgia. Dr. Friedman acknowledged that [Mrs.] Lloyd's pain complaints were subjective, but he concluded that the accident had aggravated her condition.

Bell's medical expert, David Glaser, M.D., disputed Dr. Friedman's diagnosis, suggesting that [Mrs.] Lloyd's symptoms were more appropriately explained by her pre-existing back and neck conditions. Notes of Testimony (N.T.), 10/2/12, at 71-72. Dr. Glaser also testified, in part, as follows:

Q: All right. Doctor, after the accident, you looked at a copy of the emergency department records, correct?

A: I did.

Q: Could you tell us about that?

A: The emergency room records basically documented I think what you all heard about, that she was driving, the car hit from behind, she came in hours later. It diagnosed her with having cervical sprain. Also mentioned the shoulder contusion. There was some bruising as well mentioned.

*Id.* at 60-61. Thereafter, Dr. Glaser acknowledged that the "scrapes or contusions" seen in the emergency room "maybe" were objective findings of injury. *Id.* at 68. Dr. Glaser summarized his conclusions in the following manner:

Q: Doctor, at the time you saw Mrs. Lloyd in 2012, do you have an opinion as to whether she was suffering from any accident related injury?

A: It was my opinion when I saw her she was not suffering from any accident related injury within medical certainty.

…

Q: Even though there was nothing objective that you saw, you leave open the possibility that [Mrs. Lloyd] could have suffered an injury as a result of the accident?

[Appellants' Counsel]: Objection. Leading.

T[rial] Court: Overruled.

Dr. Glaser: Yes.

*Id.* at 68-69 (formatting modified). In this context, Dr. Glaser testified that it was "reasonable to consider" that [Mrs.] Lloyd suffered a strain of her neck or back. *Id.* at 69. However, Dr. Glaser testified further that no objective evidence of a strain existed. *Id.* at 70. According to Dr. Glaser, strains that are not viewable by MRI take approximately three months to heal. *Id.* at 72. Dr. Glaser examined Lloyd on July 11, 2012, more than three years after the accident. *Id.* at 45.

Following trial, the [trial court] instructed the jury on factual cause. [Appellants] did not object to this instruction. However, [Appellants] objected to the first jury interrogatory on the verdict slip, which asked whether Bell's negligence was a factual cause in bringing about [Mrs.] Lloyd's injuries. Counsel for [Appellants] objected in the following manner:

[Appellants' Counsel]: Secondly, we object to question number one because we believe that [Bell's] expert testified there was some injury. And under those circumstances, the case law is clear that the jury should not be allowed to find that there was no injury in the case because there's injury coming from both experts in the case.

*Id.* at 146. [The trial court] reviewed Dr. Glaser's testimony and overruled [Appellants'] objection. After deliberation, the jury returned a verdict for the defense, answering the first interrogatory in the negative, thus finding no causation.

[Appellants] filed post-trial motions, alleging numerous grounds for a new trial, including one that renewed [Appellants'] objection to the verdict slip:

> This Honorable Court committed prejudicial/harmful errors of law and/or abused its discretion by permitting, over objection, Question #1 of the Verdict Slip to permit the jury to find that the negligence of [Bell] was not a factual cause of harm to [Mrs.] Lloyd, where [Bell's] medical proof, including expert medical proof and [Appellants'] medical proof, including expert medical proof, establish that there was at least some injury to [Mrs.] Lloyd, caused by the negligence of [Bell][.]

[Appellants'] Motion for Post Trial Relief, at 3. The trial court granted a new trial on this ground, concluding that it had erred in failing to instruct the jury that it must "award some type of recovery." *See* Order of Court, 2/11/13, at 2 n.1.

*Lloyd v. Bell,* 97 A.3d 799 (Pa. Super. 2014) (unpublished memorandum filed February 14, 2014) at 1-5.

Bell timely appealed the trial court's grant of a new trial, and Appellants cross-appealed the trial court's denial of the additional grounds Appellants had raised for a new trial. We determined that Appellants' cross-appeal was not "properly before us" because the "trial court granted [Appellants'] motion for a new trial, [and therefore, Appellants were] not … aggrieved … and may not appeal the [trial] court's order." *Id.* at 2 *citing In re Estate of Pendergrass,* 26 A.3d 1151, 1154 (Pa. Super. 2011) ("A prevailing party is not 'aggrieved' and therefore, does not have standing to appeal an order that has been entered in his or her favor.") and *citing* Pa.R.A.P. 501.

We further observed:

- 4 -

According to Bell, the trial court erred in granting a new trial because Dr. Glaser did not concede that Lloyd suffered an accident-related injury. Rather, according to Bell, Dr. Glaser merely acknowledged that it was possible Lloyd had suffered a cervical strain. Bell contends that this distinction is significant because an expert's language regarding "possibilities" does not establish the requisite degree of medical certainty, citing in support *Griffin v. Univ. of Pittsburgh Med. Ctr.*, 950 A.2d 996 (Pa. Super. 2008). Bell concludes that because Dr. Glaser did not concede an injury to [Mrs.] Lloyd, the jury was free to return a verdict of no causation. *See Livelsberger v. Kreider*, 743 A.2d 494 (Pa. Super. 1999); *Henery v. Shadle*, 661 A.2d 439 (Pa. Super. 1995), *appeal denied*, 668 A.2d 1133 (Pa. 1995).

*Lloyd, supra,* at 9-10.

In determining that the trial court erred in granting Appellants a new trial, we explained:

Absent expert evidence conceding an injury to the plaintiff that is sufficiently certain, the assessment of the jury must prevail. [*Criswell v. King,* 834 A.2d 505, 512-513 (Pa. 2003)]; *see also Neison v. Hines*, 653 A.2d 634, 637 (Pa. 1995) ("[T]he jury is free to believe all, some, or none of the testimony presented by a witness … up until the point at which [its] verdict is so disproportionate to the uncontested evidence as to defy common sense and logic."). The trial judge must defer to this assessment, decline to usurp the role of the jury as fact finder, and deny the weight of evidence claim. *Criswell* at 512-13. Accordingly, absent sufficient evidence, a trial court's decision to grant a new trial constitutes an abuse of discretion. *Id.*; *see also Huber*, 58 A.3d at 775-777.

The question remains whether the defense conceded injury in this case.

Where there is no dispute that the defendant is negligent and both parties' medical experts agree the accident caused some injury to the plaintiff, the jury may not find the defendant's negligence was not a substantial factor in bringing about at least some of plaintiff's injuries.

*Andrews*, 800 A.2d at 962 (citing *Neison*, 653 A.2d at 637); *see also Mano v. Madden*, 738 A.2d 493, 497 (Pa. Super.

- 5 -

1999). However, absent a concession of injury, "the fact finder resolves conflicts in evidence." **Livelsberger [v. Kreider,]** 743 A.2d [494,] 496 [(Pa. Super. 1999)] (distinguishing **Neison**); **see also Henery v. Shadle**, 661 A.2d [439,] 442 [(Pa. Super. 1995)] (defense testimony acknowledging that plaintiff "may very well have suffered" some injury did not constitute a concession).

We have reviewed Dr. Glaser's testimony in its entirety. As we have set forth the relevant testimony above in detail, we need not repeat it. Nevertheless, it is clear that Dr. Glaser rejected Dr. Friedman's diagnosis, concluding that [Mrs.] Lloyd was not suffering from any accident-related injury when he examined her. In his expert medical opinion, Dr. Glaser further concluded that [Mrs.] Lloyd's pre-existing conditions were responsible for her ongoing discomfort. When asked on direct examination whether it was "possible" that [Mrs.] Lloyd "could have suffered an injury" in the accident, Dr. Glaser acknowledged that it was "reasonable to consider" that [Mrs.] Lloyd suffered a cervical strain. We conclude that Dr. Glaser's testimony fails to meet the requisite certainty to establish a concession of injury. **Griffin**, 950 A.2d at 1003 (rejecting as insufficient testimony suggesting the conduct of defendant's staff "more likely than not" caused an injury). Accordingly, **Andrews** does not apply, and the case properly went to the jury to determine causation. **Livelsberger**, 743 A.2d at 496.

In its order granting a new trial, the trial court indicated that Dr. Glaser's cross-examination testimony conceded an injury to Lloyd's neck. We find no support in the transcript for this conclusion. The focus of Dr. Glaser's cross-examination testimony was upon the thoroughness with which he reviewed [Mrs.] Lloyd's medical history and his rejection of Dr. Friedman's diagnosis. Moreover, we disagree with the [trial] court's characterization of Dr. Glaser's testimony to the extent it concluded Dr. Glaser acknowledged a "probable neck strain." Dr. Glaser never testified to the probability of a cervical strain. Nevertheless, testimony suggesting that an alleged injury was "very highly probable" has similarly been rejected. **Id.** (citing, *e.g.*, **Eaddy [v. Hamaty,]** 694 A.2d [639,] 642 [(Pa. Super. 1997)] (rejecting an expert report that characterized an alleged cause as "the most reasonable probability" for the injury).

The trial court also noted Dr. Glaser's purported concession that [Mrs.] Lloyd suffered scrapes and bruises. Again, we

disagree. In recounting the manner in which he reviewed [Mrs.] Lloyd's medical records, Dr. Glaser merely acknowledged the contents of the emergency room record, which mentioned "the shoulder contusion," "some bruising," and a "cervical sprain." Dr. Glaser did not adopt the emergency room record as his opinion, nor did he testify to a medical certainty that its contents were correct. To the contrary, on cross-examination, Dr. Glaser appeared to minimize such records' importance, testifying that the opinions of other doctors as contained in their reports are "great to know," but that "they confirm my opinions … they don't change my opinions." N.T. at 83. Therefore, this testimony does not constitute a concession of injury. *Id.*

After reviewing Dr. Glaser's testimony in its entirety, we discern no error in the [trial] court's stewardship of this trial. The trial court properly overruled [Mrs.] Lloyd's objection to the verdict slip interrogatory and properly submitted the question of causation to the jury. Accordingly, mindful of our standard of review, we must reverse the court's order granting a new trial. *Huber*, 58 A.3d at 776; *Griffin*; *Criswell*. On remand, the parties may praecipe for the entry of judgment on the jury verdict.

*Lloyd, supra,* at 13-16 (footnote omitted).

Appellants did not petition for allowance of appeal from our February 14, 2014 reversal of the trial court's order granting Appellants a new trial. Upon remand, on May 13, 2014, Appellants praeciped for the entry of judgment. On the same date, judgment was entered in favor of Bell and against Appellants. On June 11, 2014, Appellants filed a timely notice of appeal. On June 16, 2014, the trial court ordered Appellants to file a concise statement of errors complained of on appeal, which Appellants filed on July 2, 2014. On July 23, 2014, the trial court issued its Pa.R.A.P. 1925(b) opinion which stated "[u]pon review of [Appellants'] statement, it appears to be almost identical to the [c]oncise [s]tatement filed in the 2013 [a]ppeal,

with some minor additions to the issues. As the issues are identical, I have nothing to add to the June 5, 2013 Opinion I authored on Appellants' 2013 [a]ppeal … and direct your attention to pages 7-10 [of the June 5, 2013 opinion]." Trial Court Opinion, 7/23/14, at 1.

On August 7, 2014, Bell filed a motion to quash and/or dismiss the appeal, contending that Appellants' "issues raised on appeal were decided either directly or implicitly in the first appeal[.]" Motion to Quash and/or Dismiss Appeal, 8/7/14, at 1. On September 15, 2014, Appellants filed an answer to Bell's motion. On October 3, 2014, we denied Bell's motion without prejudice to Bell to renew his request with this merits panel. Upon consideration, we deny Bell's motion to quash and/or to dismiss this appeal. In our February 14, 2014 memorandum, we specifically determined that Appellants' issues could not be properly before us *until* Appellants became aggrieved parties. ***See Lloyd, supra,*** at 16. Appellants became aggrieved parties on May 13, 2014, following the entry of the judgment in Bell's favor and against Appellants. Therefore, we do not find that under the particular circumstances of this case that Appellants are precluded from raising their issues before this panel.

Appellants present the following issues for our review:

1. Whether the trial court prejudicially/harmfully erred and/or abused its discretion by permitting defense counsel to cross-examine [Mrs. Lloyd] by reading to the jury and exhibiting to the jury by overhead screen projection for the jury's reading — hearsay medical records of [Mrs. Lloyd] — where these medical records were not admitted into evidence and included diagnostic studies where the opinions and conclusions of the radiologists

were read by defense counsel to the jury and exhibited by defense counsel to the jury for their reading during cross-examination?

2. Whether the trial court prejudicially/harmfully erred and/or abused its discretion by permitting the defense medical expert to testify as to the substance of any number of [Mrs. Lloyd's] medical records, both post and prior to the accident, where none of those medical records were included in the defense expert report, in violation of Pa.R.C.P. 4003.5 and further where defense expert did not testify that he relied upon these hearsay medical records for any basis of his medical opinions?

3. Whether the trial court prejudicially/harmfully erred and/or abused its discretion by permitting the defense medical expert to challenge the nature and legitimacy of the diagnoses of [Mrs. Lloyd's] accident-related injuries without any mention of these diagnoses in the defense expert report, nor any mention of any challenge as to the nature of these diagnoses in the defense medical report, in violation of Pa.R.C.P. 4003.5?

4. Whether the trial court prejudicially/harmfully erred and/or abused its discretion by permitting defense counsel to phrase questions and make argument by reading, and/or exhibiting, the substance of [Mrs. Lloyd's] medical records, including diagnostic records, predating the accident, as well as permitting the defense medical expert to testify as to the substance of these pre-accident records, where the defense medical expert admittedly does not attribute any such past medical condition of [Mrs. Lloyd's] to [Mrs. Lloyd's] post-accident medical condition?

5. Whether the trial court prejudicially/harmfully erred by refusing to charge the jury on the Pennsylvania Standard Jury instruction 7.90 (Civ. 4th Ed.) — Other Contributing Causes?

6. Whether the trial court prejudicially/harmfully erred by refusing to remove the word "the" from the first jury interrogatory; suggesting to the jury that they had to find one specific set or version of the injuries as opposed to any injuries or damage that they may have found from the totality of the evidence?

Appellants' Brief at 5-6.

- 9 -

Appellants' first, second, third and fourth issues challenge the trial court's evidentiary rulings which allowed Bell's counsel to cross-examine Mrs. Lloyd, and directly examine Bell's medical expert, regarding, and in reference to, Mrs. Lloyd's pre-accident medical records and diagnoses, and which allowed Bell's medical expert to challenge Mrs. Lloyd's post-accident diagnosis of myofascial pain syndrome and fibromyalgia. In reviewing these, we recognize:

> [O]ur standard of review when faced with an appeal from the trial court's denial of a motion for a new trial is whether the trial court clearly and palpably committed an error of law that controlled the outcome of the case or constituted an abuse of discretion. In examining the evidence in the light most favorable to the verdict winner, to reverse the trial court, we must conclude that the verdict would change if another trial were granted. Further, if the basis of the request for a new trial is the trial court's rulings on evidence, then such rulings must be shown to have been not only erroneous but also harmful to the complaining parties. Evidentiary rulings which did not affect the verdict will not provide a basis for disturbing the jury's judgment….
>
> Moreover, the admission or exclusion of evidence is within the sound discretion of the trial court. In reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law.

*Schmidt v. Boardman*, 958 A.2d 498 (Pa. Super. 2008), *affirmed,* 11 A.3d 924 (Pa. 2011) (citation omitted).

Additionally, we are mindful that:

> The scope and manner of cross-examination are within the sound discretion of the trial court and will not be overturned unless the court has abused that discretion.

- 10 -

*Commonwealth v. Nunn,* 947 A.2d 756, 761 (Pa. Super.2008) (citations omitted), *appeal denied,* 947 A.2d 756 (Pa. Super. 2008). Further, we have generally defined the scope of cross-examination to include "inferences, deductions, or conclusions which may be drawn therefrom, which explain or destroy the effect of direct testimony." *Nunn,* 947 A.2d at 762 (citation omitted). []

Pa.R.E. 611 provides in relevant part:

**Mode and order of interrogation and presentation**

**(a) Control by [the] court.** The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time and (3) protect witnesses from harassment or undue embarrassment.

**(b) Scope of cross-examination.** Cross-examination of a witness other than a party in a civil case should be limited to the subject matter of the direct examination and matters affecting credibility; however, the court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination. **A party witness in a civil case may be cross-examined by an adverse party on any matter relevant to any issue in the case, including credibility,** unless the court, in the interests of justice, limits the cross-examination with respect to matters not testified to on direct examination.

Pa.R.E. 611(a) and (b).

*In re M.W.,* 972 A.2d 1213, 1216 (Pa. Super. 2009) (emphasis supplied)[2].

Instantly, the trial court properly allowed references to Mrs. Loyd's

medical records, her pre-accident medical history, and her prior diagnoses

_____

[2] While the language of Pa.R.E. 611(a) was amended in 2013, and again in 2014, the version of Pa.R.E. 611 cited in *In re M.W.* was in effect at the time of the trial in this case.

- 11 -

during, *inter alia,* Bell's counsel's cross-examination of Mrs. Lloyd, and during the testimony of Bell's expert. A key contention at trial was the nature, extent, and causation of Mrs. Lloyd's post-accident injuries given her "extensive, pre-accident medical history of back and neck problems." ***Lloyd, supra,*** at 3. We find that Mrs. Lloyd, in this personal injury action, testifying as a "party witness in a civil case", was subject to cross-examination by Bell, "an adverse party," regarding her pre-existing conditions which were "relevant" to the issues in the case, and that said examination properly included references to her prior medical records and conditions. ***M.W.***, 972 A.2d at 1216; Pa.R.E. 611(b); ***see also American Future Systems, Inc. v. BBB,*** 872 A.2d 1202, 1212 (Pa. Super. 2005) ("Admission of evidence is within the sound discretion of the trial court and we review the trial court's determinations regarding the admissibility of evidence for an abuse of discretion.").

Appellants' own counsel during his opening statement commented on Mrs. Lloyd's prior medical history. Appellants' counsel asserted that Dr. Jeffrey Friedman, Appellants' medical expert and one of Mrs. Lloyd's treating physician's following the accident, would "testify that [Mrs. Lloyd's] general state of health was good" at the time of the accident. N.T., 10/1/12, at 18. Appellants' counsel further informed the jury that Mrs. Lloyd "had back surgery 20 years ago, and she had recovered from that low back surgery … She also had a condition that was diagnosed in 2005, and D[r]. Friedman will talk to you about this." ***Id.*** During Mrs. Lloyd's direct examination, Mrs.

Lloyd denied having "problems doing" household chores prior to the accident. *Id.* at 53. She further testified that she "d[id]n't recall having any problems" before the collision. *Id.* at 56. While Mrs. Lloyd admitted receiving a diagnosis and medication "[b]ack in 2006" for fibromyalgia, Mrs. Lloyd testified that said condition "just kind of went away" and that she was "[n]ot … aware of" suffering "from that fibromyalgia at all at the time of this accident[.]" *Id*. at 57. Appellants' counsel specifically asked Mrs. Lloyd about her 2008 cervical "MRI by Doctor Haplea." *Id.* at 57-58. When asked if "any problems with [her] neck" were found, Mrs. Lloyd answered "[n]o." *Id.* at 58. When the trial court inquired "[a]re we going to have this covered by Dr. Friedman's testimony[,]" Appellant's counsel replied "[y]es[,]" and further expressed, "I'm anticipating it might be covered as well on cross[-examination]." *Id.* at 58. Accordingly, we are not persuaded by Appellants' arguments that Bell improperly relied on and referenced Mrs. Lloyd's medical records during Mrs. Lloyd's cross-examination, especially when Bell's questions, *inter alia,* were germane to challenging Mrs. Lloyd's credibility regarding her recollection and understanding of her medical history, records, and conditions. *See generally id.* at 66-90. Our assessment is further buttressed by Appellants' counsel's indication to the trial court that during his redirect examination of Mrs. Lloyd, he would be using Mrs. Lloyd's medical records "to the same extent [Bell's counsel] used them on [cross-examination]." *Id.* at 90.

Further, based on our careful review of the record, we are not persuaded by Appellants' arguments that the trial court erred or abused its discretion in allowing Bell's expert to reference and be questioned about Mrs. Lloyd's prior medical records and conditions. We recognize:

> A trial court is vested with wide discretion in deciding whether to allow the admission of expert testimony into evidence, and is not subject to reversal absent a clear abuse of discretion. *Allegheny Ludlum Corp. v. Mun. Auth. of Westmoreland County,* 659 A.2d 20 (Pa.Cmwlth.1995). Only when the admission of the testimony is harmful or prejudicial to the party complaining will reversible error exist. *Id.*

> Discovery of information concerning expert testimony is governed by Pa. R.C.P. No. 4003.5. That Rule states, in relevant part:

>> [T]he direct testimony of the expert at the trial may not be inconsistent with or go beyond the fair scope of his or her testimony in the discovery proceedings as set forth in the deposition, answer to an interrogatory, separate report, or supplement thereto. However, the expert shall not be prevented from testifying as to facts or opinions on matters on which the expert has not been interrogated in the discovery proceedings.

> Pa. R.C.P. No. 4003.5(c). The explanatory comment to Rule 4003.5(c) explains the Rule is intended to "prevent the submission of incomplete or 'fudging' of reports which would fail to reveal fully the facts and opinions of the expert or his grounds therefor[e]..." Pa. R.C.P. No. 4003.5(c), Explanatory Comment-1978.

> The primary purpose of the Rule is to avoid unfair surprise to an adversary concerning the facts and substance of an expert's proposed testimony. *United States Mineral Prods. Co.* The question of whether the permissible limits of testimony under the Rule were violated is determined on a case by case basis, and the essence of the inquiry is fairness. *Id.* The question is whether the discrepancy between the expert's pre-trial report and his trial testimony is of a nature that would prevent the adversary from preparing a meaningful response, or

- 14 -

which would mislead the adversary as to the nature of the appropriate response. *Id.* The opposing party must suffer prejudice as a result of the testimony going beyond the fair scope of the expert's report before admission of the testimony is considered reversible error. *Id.*

Thus, in determining whether an expert's trial testimony falls within the fair scope of his pre-trial report, a trial court must determine whether the report provides sufficient notice of the expert's theory to enable the opposing party to prepare a rebuttal witness. *Feden v. Consol. Rail Corp.,* 746 A.2d 1158 (Pa. Super. 2000). Under this analysis, an expert's trial testimony may be found unobjectionable whenever it could reasonably have been anticipated from the content of the expert's pre-trial report. *Butler v. Kiwi, S.A.,* 412 Pa.Super. 591, 604 A.2d 270 (1992). An expert's trial testimony that constitutes a reasonable explanation or even an enlargement of the expert's written words may be deemed to fall within the coverage of "fair scope." *Hickman v. Fruehauf Corp.,* 386 Pa.Super. 455, 563 A.2d 155 (1989); *Wilkes-Barre Iron v. Pargas of Wilkes-Barre,* 348 Pa.Super. 285, 502 A.2d 210 (1985).

Moreover, where a plaintiff introduces certain evidence in his case-in-chief, he cannot later deprive his opposition of the privilege of denying it. *See Leaphart v. Whiting Corp.,* 387 Pa.Super. 253, 564 A.2d 165 (1989). Thus, an expert's opinion offered in response to other testimony presented at trial need not be addressed in the expert's report. *Allegheny Ludlum; Earlin v. Cravetz,* 264 Pa.Super. 294, 399 A.2d 783 (1979).

**Daddona v. Thind,** 891 A.2d 786, 805-806 (Pa. Cmwlth. 2006).

Here, in rebutting Appellants' claims of error, the trial court explained:

[Appellants] object to my rulings regarding the scope and nature of Dr. Glaser's testimony.

Pa. R.C.P. 4003.5 governs resolution of these claims. Rule 4003.5(c) sets forth what is commonly referred to as the "fair scope rule."

The rule:

"…favors the liberal discovery of expert witnesses and disfavors unfair and prejudicial surprise."

Jones v. Constantino, 631 A.2d 1289, 1294 (Pa. Super. 1993)

\*\*\*

I invite your attention to N.T., October 2, 2012, pgs. 8-15, where the scope of Dr. Glaser's anticipated testimony was discussed. I also invite your attention to Dr. Glaser's report of July 11, 2012, Exhibit D-10, "Records Reviewed" (p. 3) and "Comments" (p. 4).

**I believe that given [Mrs. Lloyd's] medical history which both parties had, it would come as no surprise to experienced counsel that the defense would attempt to use those records to show that [Mrs. Lloyd's] current complaints related to her prior history, not the incident**. Thus, the surprise element disfavored by the rule was not violated.

**[Appellants] also assert that Dr. Glaser's testimony as to the contents of medical reports was impermissible hearsay. Again, I disagree.**

Expert witnesses, like any other witness, are subject to the "hearsay evidence rule." What was said in Woodward v. Chatterjee, 827 A.2d [433,] 444 [(Pa. Super. 2003)], is applicable here:

> As an exception to the rule against hearsay, "it is well understood that medical experts are permitted to express opinions which are based, in part, upon reports which are not in evidence, but which are customarily relied upon by experts in the practice of the profession." Primavera v. Celotex Corp., 415 Pa.Super. 41, 608 A.2d 515, 518-19 (1992). We recognize that a physician will often base his or her diagnosis on information obtained through other sources such as statements from patients, nurses' reports, hospital records, and laboratory tests. *Id.* at 520. "The fact that experts reasonably and regularly rely on this type of information merely to practice their profession lends strong indicia of reliability to source material, when it is presented through a

- 16 -

qualified expert's eyes." *Id*. "[W]hen the expert witness has consulted numerous sources, and uses that information, together with his own professional knowledge and experience, to arrive at his opinion, that opinion is regarded as evidence in its own right and not as hearsay in disguise." *Id*. (quoting United States v. Williams, 447 F.2d 1285, 1290 (5th Cir. 1971.)).

[Appellants] further argue that Dr. Glaser merely parroted what the extra judicial statements said without connecting them to his opinion. Again, Woodward is helpful:

An "expert" should not be permitted simply to repeat another's opinion or data without bringing to bear on it his own expertise and judgment. Obviously, in such a situation, the non-testifying expert is not on the witness stand and truly is unavailable for cross-examination. The applicability of the rule permitting experts to express opinions relying on extrajudicial data depends on the circumstances of the particular case and demands the exercise, like the admission of all expert testimony, of the sound discretion of the trial court. Where … the expert uses several sources to arrive at his or her opinion, and has noted the reasonable and ordinary reliance on similar sources by experts in the field, and has coupled this reliance with personal observation, knowledge and experience, we conclude that the expert's testimony should be permitted.

Id. at 521 (footnote omitted).

As evidenced by Dr. Glaser's testimony, he noted the records he reviewed and how his opinion was impacted by those records. His testimony does not merely parrot the other medical records, it was clear they were used in forming his opinion.

See N.T., October 2, 2012, pgs. 53-65.

Trial Court Opinion, 6/5/13, at 7-9 (footnotes omitted) (emphasis supplied).

The trial court's reasoning is supported by the record. Significantly, we previously and expressly determined that "[a]fter reviewing Dr. Glaser's

testimony in its entirety, we discern no error in the [trial] court's stewardship of this trial." **Lloyd, supra,** at 16. Accordingly, based on our careful examination of the record and consonant with Pa.R.E. 611, **M.W.**, **American Future Systems, Daddona,** and the authorities cited therein, we affirm the trial court's evidentiary rulings and find that Appellants' first, second, third, and fourth issues are without merit.

In their fifth issue, Appellants contend that the trial court "prejudicially/harmfully erred by refusing to charge the jury on the Pennsylvania Standard Jury Instruction 7.90 (Civ. 4th Ed.) - Other Contributing Causes." In support of their claim, Appellants set forth the foregoing jury instruction and reference the instruction's "[s]ubcommittee [n]ote." Appellants' Brief at 53. In so doing, Appellants discount that "we are not bound by the explanatory notes contained within the Rules of Civil Procedure." **See Gladstone Partners, LP v. Overland Enterprise, Inc.,** 950 A.2d 1011, 1015 n.5 (Pa. Super. 2008) (internal citation omitted). Appellants cite only a 1989 case for the general proposition that "[t]o be reversible error, the jury instruction, or failure to provide such an instruction, must be erroneous and harmful." Appellants' Brief at 54. Significantly, Appellants fail to cite any binding precedent that supports their position that the trial court erred in not giving this instruction under the particular circumstances of this case.

Likewise, in their sixth issue Appellants contend that the trial court erred "by refusing to remove the word 'the' from the first jury interrogatory;

suggesting to the jury that they had to find one specific set or version of the injuries as opposed to any injuries or damage that they may have found from the totality of the evidence." Appellants' Brief at 54. Appellants only dedicate 15 lines of text to this issue, and fail to cite a single case or other legal authority. Their failure to develop and support their arguments with pertinent jurisprudence effects a waiver of their fifth and sixth issues, and we decline to reach them. ***See Giant Food Stores, LLC v. THF Silver Spring Development, L.P.,*** 959 A.2d 438, 444 (Pa. Super. 2008) ("Appellant's issue on appeal is waived because [Appellant] has failed to set forth in its appellate brief any citation to legal authority pertaining to [Appellant's] argument"); ***see also Korn v. Epstein,*** 727 A.2d 1130, 1135 (Pa. Super. 1999) ("arguments not *appropriately* developed are waived") (emphasis in original) (internal citations omitted).

Judgment affirmed. Bell's motion to quash and/or dismiss this appeal denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/3/2015

- 19 -